## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| **TERRELL BATTLES** | **CASE NO.:** |
| Plaintiff, | **JUDGE:** |
| **CITY OF AKRON, OHIO**<br>C/O<br>Akron Law Director<br>172 S. Broadway, Suite 200<br>Akron, Ohio 44308 | |
| and | **PLAINTIFF'S COMPLAINT** |
| **OFFICER WARREN SPRAGG**<br>**(In his Official and Individual Capacities)**<br>C/O<br>Akron Police Department<br>217 S. High Street<br>Akron, Ohio 44308 | |
| C/O<br>Akron Law Director<br>172 S. Broadway, Suite 200<br>Akron, Ohio 44308 | **(Jury Demand Endorsed Hereon)** |

Plaintiff Terrell Battles, by and through counsel Imokhai Okolo, brings this Complaint against Defendants City of Akron, Ohio and Warren Spragg (collectively, "Defendants"), and makes the following allegations upon personal knowledge as to Plaintiff's own acts and upon information and belief, and states as follows:

### INTRODUCTION

1. This cause of action arises out of Terrell Battles' June 28, 2024, encounter with members of the Akron Police Department on Copley Rd. in Akron Ohio.

2. Plaintiff alleges, without limitation, that on June 28, 2024, Defendant Warren Spragg wrongfully used gratuitous force against Mr. Battles when he punched Mr. Battles in the face multiple times, breaking his nose. Mr. Battles was NOT actively resisting arrest and posed NO threat to Defendants or others.

3. Plaintiff further alleges, without limitation, that Defendant Warren Spragg wrongfully arrested Mr. Battles after assaulting him and wrongfully pursued the criminal prosecution of Mr. Battles.

4. Plaintiff further alleges, without limitation, that Defendant City of Akron knew or reasonably should have known, participated in, endorsed, condoned, and/or ratified the unconstitutional conduct of Defendant Warren Spragg.

5. This cause of action is for money damages brought pursuant to 42 U. S. C.  §1983 to redress the deprivation of the rights of Terrell Battles under the color of law by members of the Akron Police Department and City of Akron Law Department.

6. Plaintiff also brings this action pursuant to *Monell v. Department of Social Services of City of New York*, 463 U.S. 658 (1978) and its progeny.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over federal questions pursuant to 28 U.S. C. § 1331, §1343, and 42 U. S. C. §§ 1983,1988.

8. Venue is proper in the Northern District of Ohio pursuant to 28 U.S.C.§1391 (b) because all incidents and events giving rise to the action occurred in the Northern District of Ohio, and upon information and belief, all parties reside in this Judicial District.

## PARTIES

9.  At all times relevant to this action, Plaintiff was a resident of the City of Akron, Summit County, Ohio.

10. At all times relevant to this action, Defendant Warren Spragg is/was employed as a police officer for Defendant City of Akron, Ohio, and are residents of Summit, Stark, Portage, or Trumbull County, Ohio.

11. At all times relevant to this action, Defendant City of Akron, Ohio is a municipal corporation located in Summit County, state of Ohio.

12. At all times relevant to this action Defendant City of Akron employed all Defendant police officers identified herein.

13. Redress is being sought from all Defendants in their official and individual capacities, and all Defendants were acting under and/or outside of color of law and/or pursuant to the policies, customs, and/or usages of the City of Akron.

## FACTUAL ALLEGATIONS

**June 28, 2024 Arrest of Plaintiff**

14. On January 11, 2024, Defendant police officers were on patrol in in the West Akron Neighborhood on Copley Rd.

15.  For no apparent reason, Defendant Warren Spragg decided to run the license plate of a silver ford fusion traveling east on Copley Rd. with two Black male passengers.

16. Plaintiff was the passenger of this vehicle.

17. There is no allegation that the driver committed any traffic violations or did anything suspicious.

18. All indications lead Plaintiff to believe he and the driver of the vehicle were racially profiled.

3

19. Upon running the license plate, Defendant Warren Spragg pulled the vehicle over for an expired license plate.

20. Once the vehicle was stopped, it was discovered that the driver of the vehicle did not have a valid drivers license.

21. The driver of the vehicle was pulled out of the vehicle and arrested.

22. Plaintiff was asked to produce his drivers license, and he complied.

23. Subsequently, Defendant Warren Spragg asked Plaintiff to exit the vehicle, and Plaintiff responded by asking for justification.

24. Defendant Warren Spragg then escalated the situation and proceeded to drag Plaintiff out of the vehicle for no legitimate reason.

25. Instead of speaking to Plaintiff like a human being and using de-escalation techniques, Defendant Warren Spragg immediately and unjustifiably chose aggression and violence.

26. At no point did Plaintiff resist arrest or obstruct any officer from engaging in their official duties.

27. After dragging Plaintiff out of the car, Defendant Warren Spragg began punching Plaintiff in the face and in the torso.

28. Once Plaintiff was on the ground. Akron Police Officers had full control of his body.

29. Specifically, Officer Thomas Phillips was on Plaintiff's back and had control of his left arm.

30. Defendant Warren Spragg had control of Plaintiff's right arm.

31. Defendant Warren Spragg let go of Plaintiff's right arm and for a third time punched plaintiff directly in the face, breaking his nose.

4

32. Plaintiff was subsequently arrested and charged with resisting arrest and obstruction of official business.

**Criminal Prosecution of Plaintiff**

33. Plaintiff appeared in court and pleaded not guilty to all charges.

34. Plaintiff was offered a plea deal but refused given his innocence.

35. ALL charges against Plaintiff were subsequently dismissed.

**Akron Independent Police Auditor Use of Force Review**

36. On July 16, 2024, Sergeant Utomhin Okoh conducted a Use of Force Investigation.

37. Despite the clear excessive force used against Plaintiff, Sergeant Okoh found the force used to be objectively reasonable and failed to discipline Defendant Warren Spragg for his conduct.

38. On January 22, 2025, City of Akron Independent Police Auditor, Anthony Finnell released a report detailing his conclusions and recommendations after having conducted a review of the incident.

39. Independent Police Auditor Finnell made the following conclusions:

    a. The level of force used against Plaintiff by Defendant Warren Spragg was excessive.

    b. Defendant Warren Spragg failed to adequately and clearly communicate his intentions and actions which exacerbated the situation.

    c. Defendant Warren Spragg missed multiple opportunities to calm the situation through dialogue and rapport-building, relying instead on commands and physical force.

40. Auditor Finnell ultimately recommend the Akron Police Department change the disposition of Defendant Warren Spragg's use of force, under case number 24-00077110 from Objectively Reasonable to Not Objectively Reasonable and take appropriate disciplinary action as warranted by such a disposition.

41. Auditor Finnell also recommended a review of the Use of Force Police, greater enforcement of the policy, additional training, and enhanced supervision.

**Defendant Warren Spragg's History**

42. Defendant Warren Spragg has an extensive history of excessive force and use of force generally while being employed with the Akron Police Department.

43. Upon information and belief, for the past two years Defendant Warren Spragg has had the highest amount of use of force cases, well exceeding the department average.

44. Defendant Warren Spragg has been sued in the past for excessive force and has had multiple complaints against him for his conduct.

45. Despite this, the City of Akron, the Akron Police Department, and multiple Akron Police Sergeants have condoned this behavior and have failed to discipline Defendant Warren Spragg for his conduct.

46. As a result, people in the city of Akron, particularly Black men like Plaintiff, have been subjected to violence by Defendant Warren Spragg.

**CLAIMS ALLEGED**
**COUNT 1**
**(Excessive Force)**

47. All preceding paragraphs are incorporated as if fully re-written herein.

48. This claim is brought pursuant to Title 42 U.S.C. § 1983.

6

49. Title 42 U.S.C. §1983 states, in relevant part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . ."

50. The Fourth Amendment to the United States Constitution states, in relevant part, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated. . . ."

51. While acting under color of state law, Defendant Warren Spragg deprived Plaintiff of his well-established right to be free from excessive force by engaging in conduct described above.

52. While acting under color of state law, Defendant Warren Spragg deprived Plaintiff of his well-established constitutional right not to be subjected to excessive force while being arrested, even if his arrest could have been otherwise proper.

53. While acting under color of state law, Defendant Warren Spragg deprived Plaintiff of his well-established constitutional right to be free from gratuitous force when he was not actively resisting arrest and posed no danger to Defendant police officers or third parties.

54. On June 28, 2024, Defendant Warren Spragg was only permitted to use the amount of force necessary under the circumstances to arrest Plaintiff.

55. At all times relevant to this matter, Defendant Warren Spragg was clothed with the authority of the state and misused that authority.

56. In this case, Plaintiff claims Defendant Warren Spragg used excessive force when he arrested and/or seized the person of Plaintiff, to wit:

    a.   Defendant Warren Spragg placed Plaintiff in handcuffs; and

    b.   Defendant Warren Spragg applied gratuitous force to Plaintiff when he punched Plaintiff in the face and torso while Plaintiff was not resisting arrest.

57. As a direct and proximate result of Defendant Warren Spragg's actions, as set forth above, Plaintiff has been damaged, including but not limited to, physical injuries, endured pain, anguish, embarrassment, humiliation, feelings of powerlessness, harm to self-esteem, emotional distress, fear, anxiety, loss of sense of personal safety, dignity, and loss of time.

## COUNT 2
### (Municipal Liability Pursuant to *Monell*)

58. All preceding paragraphs are incorporated as if fully re-written herein.

59. Defendant acted pursuant to one or more interrelated de facto polices (even if not official written edicts), practices and/or customs of civil rights violations and unconstitutional practices of the City of Akron and its Police Department.

60. The City of Akron, at all times relevant herein, approved, authorized, ratified, and acquiesced in the unlawful and unconstitutional conduct of its respective employees and/or agents and consequently is directly liable for the acts of those agents pursuant to 42 U.S.C. § 1983.

61. Despite the facts and circumstances surrounding the assault and subsequent arrest of Plaintiff that clearly demonstrate that the actions of the Defendant Warren Spragg was unreasonable and unlawful, upon information and belief, the City of Akron has failed to

effectively investigate or impose any discipline on Defendant Warren Spragg for his illegal behavior and false reporting (directly or by omission of pertinent information and/or facts).

62. Akron Police failed to conduct independent and unbiased investigations into alleged misconduct of their officers.

63. Sergeant Okoh of the Akron Police Department was responsible for conducting the investigation to determine whether Defendant Warren Spragg's actions were justified, however, instead tried to justify the officers' actions by promoting an investigation based on the theory that Plaintiff was a threat to police officers and that Plaintiff resisted arrest.

64. Defendant Warren Spragg has been the subject of a federal lawsuit involving similar behavior.

65. An individual was arrested on a warrant and Defendant Warren Spragg repeatedly punched the individual in the face when that individual posed no threat and was no resisting arrest.

66. That lawsuit was settled in Plaintiff's favor.

67. Since then, there has been no investigation into Defendant Warren Spragg's conduct. Had the City if Akron conducted a proper investigation after this incident and took proper disciplinary action been taken, Plaintiff would not have been assaulted and his constitutional rights violated by Defendant Warren Spragg.

68. Defendant Warren Spragg has a history of using excessive force and Defendant City of Akron has done nothing but approve, authorize, ratify, and acquiesce in the unlawful and unconstitutional conduct of Defendant police officer Shoemaker.

69. Upon information and belief, Defendant Warren Spragg has not been properly supervised or disciplined by the Akron Police Department.

70. Defendant City of Akron is aware that its officers engage in violent behavior that involves excessive force in violation of the Fourth Amendment which disproportionately involves African Americans, to wit:

   a. The excessively forceful and violent arrest of Jeremiah Henry on March 20, 2024, an unarmed Black man who was arrested after Police Officers illegally entered his residence, unlawfully arrested him, punched him repeatedly in the face and broke his tooth; and

   b. The excessively forceful and violent arrest of Dierra Fields on January 11, 2024, an unarmed Black woman who was arrested in her family home when Police Officers illegally handcuffed her and body slammed her causing injuries; and

   c. The excessively forceful and violent arrest of Jordan Ely on July 1, 2023, an unarmed Black man was arrested and repeatedly punched in the face by Defendant Warren Spragg when Mr. Ely posed no threat and did not resist arrest; and

   d. The excessively forceful and violent arrest of Charles Hicks II on February 7, 2021, an unarmed Black male who was arrested with an officer's knee near his neck while the officer smothered his mouth and nose with snow as he lay on the ground following his refusal to leave the porch area of his home; and

   e. The excessively forceful and violent arrest of Patrick King on October 21, 2018, an unarmed white male who was tased, knocked to the ground, and punched while on his stomach for refusing to identify himself; and

     f.   The excessively forceful and violent arrest of Jamon Pruiett and LaTrent Redrick on October 1, 2017, two Black males with no prior criminal records who were shot by an Akron police officer while standing outside of an downtown area nightclub and making no threat toward any officer; and

     g.   The excessively forceful and violent arrest of Dr. Dale Leonhardt on December 5, 2015, an unarmed white male whose arm was broken by an Akron police officer following a minor traffic violation (failing to come to a full stop prior to turning right at a traffic light); and

     h.   The excessively forceful and violent arrest of Tamika Williams on October 26, 2012, an unarmed Black 13-year-old girl whose arm was broken by an Akron school resource officer after he put her arm behind her back, pushed her face-first into lockers, and lifted her off the ground.

     i.   Numerous other cases involving police officers unjustifiably and excessively using strikes to the head.

71. At all times relevant, the Defendant City of Akron and its Police Department had interrelated de facto policies, practices, and customs which included, *inter alia*:

     a.   Offering lawsuit waivers in exchange for dropping the charges against individuals who are subjected to excessive force during their arrest; and/or

     b.   The failure to properly hire, train, supervise, discipline, transfer, monitor, counsel and/or otherwise control City of Akron police officers who engage in unjustified use of excessive and unreasonable force, false arrest, and/or malicious prosecution; and/or

c.  Officers are trained and aided on how to avoid prosecution for their violent actions by re-phrasing and artfully summarizing their violent actions and encounters with citizens in police documentation; and/or

d.  The police code of silence; and/or

e.  Failure to counsel and investigate officers who have an exorbitant and above average amount of use of force incidents; and/or

f.  The failure to properly investigate the use of excessive and unreasonable force against civilians, especially African Americans, by City of Akron Police officers;

g.  The failure to properly discipline, monitor, counsel and otherwise control City of Akron police officers who engage in unjustified use of excessive and unreasonable force, false arrest, and/or malicious prosecution; and/or

h.  Condoning violent punches to the face when individuals pose no threat to police officer safety; and/or

i.  The failure to adequately train City of Akron police officers on the use of strikes to the head and the harm associated; and/or

j.  The automatic ratification of Akron police officers' actions by their immediate supervisors and department leadership despite clear evidence to the contrary.

72. For years, the City of Akron has acquiesced to a culture of violence in the Akron Police Department by abandoning its duty under the Charter of the City of Akron to exercise control over the Police Department and by avoiding any study of the number of excessive force cases and violence involved in the arrest of citizens within the City of Akron.

73. For years the City of Akron has fostered and condoned a culture of violence in the Akron Police Department by abandoning its duty under the Charter of the City of Akron to

12

remove police officers and/or exercise control over the Police Department by allowing city employees to restrict and/or interfere with and/or hamper the oversight activities of the Office of the Police Auditor

74. The aforementioned de facto polices, practices, and customs of the Akron Police Department include a pattern of acts of excessive use of force and other willful, wanton, and/or reckless behavior leading to harmful consequences to citizens.

75. The Akron Police Department has engaged in little or no meaningful investigation or disciplinary action in response to this pattern of misconduct, thereby creating a culture or climate where members of the police can and do escape their acts of misconduct with impunity.

76. This pattern is the moving force behind the conduct of the Defendant police officers in the unjustified use of excessive force against Plaintiff. This event is not an isolated incident of unconstitutional policing within the City of Akron by its officers.

77. The policy, practice and custom of a police code of silence results in police officers refusing to report instances of police misconduct of which they are aware, including unlawful searches, seizures, and prosecutions, despite their obligations under police regulations to do so, and also includes police officers remaining silent or giving false and misleading information during official investigations in order to protect themselves or fellow officers from internal discipline, civil liability or criminal charges, in cases where they and their fellow officers have engaged in misconduct.

78. The de facto polices, practices and customs of failing to hire, train, supervise, monitor, discipline, transfer, counsel and/or control police misconduct and the code of silence are

interrelated and exacerbate the effects of each other, to institutionalize police lying and

immunize police officers from discipline.

79. That the unconstitutional actions of the Defendants as alleged in this complaint were part

and parcel of a widespread municipal policy, practice and custom is further established

by the involvement in, and ratification of, these acts by municipal supervisors and policy

makers, as well as by a wide range of other police officials, officers, and divisions of the

Department.

80. The policies, practices and/or alleged customs alleged in this complaint, separately and

together, are the proximate cause of the injuries to Plaintiff because Defendant had good

reason to believe that his misconduct would not be revealed or reported by fellow officers

or their supervisors, and that he was immune from disciplinary action, thereby protecting

him from the consequences of his unconstitutional conduct.

81. But for the belief that he would be protected – both by fellow officers and the City of

Akron Police Department – from serious consequences, Defendant Warren Spragg would

not have engaged in the conduct that resulted in the injuries to Plaintiff.

82. The interrelated polices, practices and customs, as alleged in this complaint, individually

and together were maintained, and implemented with deliberate indifference and

encouraged Defendant Warren Spragg to commit the acts alleged in this complaint

against the Plaintiff.

83. The City of Akron therefore acted as the moving force behind the direct and proximate

causes of the violations of Plaintiff's constitutional rights and all injuries and damages

suffered by him.

## COUNT 3
### (State Law Claim for Assault and Battery)

84. All preceding paragraphs are incorporated as if fully re-written herein.

85. The actions of Defendant Warren Spragg towards Plaintiff created in him the apprehension of an imminent, harmful, and offensive touching, and constituted a harmful touching, made knowingly and without legal justification.

86. Defendant Warren Spragg accomplished this harmful, non-consensual touching by means of manual touch, punching, and handcuffing Plaintiff as described more fully above.

87. Defendant Warren Spragg directly and proximately caused this touching.

88. The actions of Defendant Warren Spragg thereby constituted assault and battery against Plaintiff.

89. As a direct and proximate result of this conduct by Defendant Warren Spragg, Plaintiff suffered and continues to suffer injuries and damages as described above, including, but not limited to, physical injury, adverse consequences for attending court proceedings, emotional trauma and distress, loss of reputation, loss of liberty, and other damages set forth in this Complaint.

90. In the course of this conduct Defendant Warren Spragg acted under color of law and within the scope of his employment.

## COUNT 4
### (False Arrest)

101. All preceding paragraphs are incorporated as if fully re-written herein.

102. Defendant Warren Spragg unlawfully restrained Plaintiff's freedom of movement when he detained, arrested, and searched Plaintiff.

103. Defendant Warren Spragg lacked probable cause to detain, arrest, and search Plaintiff.

15

104. Defendant Warren Spragg's conduct was a violation of Plaintiff's constitutional rights that were clearly established at the time.

105. As a result of Defendant Warren Spragg's conduct Plaintiff suffered and continues to suffer injuries and damages as described above.

## COUNT 5
**(State Law Claim for Negligence – Willful, Wanton, and/or Reckless Conduct)**

106. All preceding paragraphs are incorporated as if fully re-written herein.

107. Defendant Warren Spragg failed to exercise due care and acted in a willful, wanton, and reckless manner while engaged in police functions and activities that culminated in the above-described damages and injuries to Plaintiff.

108. Defendant Warren Spragg's reckless, wanton, and/or willful conduct proximately caused the physical and psychological damages to Plaintiff.

109. As a direct and proximate result of the misconduct of Defendant Warren Spragg, Plaintiff suffered and continues to suffer injuries and damages as described above.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands that judgement be entered in his favor on all counts and pray the Court award the following relief:

A. Compensatory and consequential damages in an amount exceeding the jurisdictional amount in controversy requirement, to be determined at trial, for the violation of Plaintiff's rights; and

B. Punitive damages in an amount to be determined at trial for the Defendants' willful, wanton, malicious, and reckless conduct; and

C. Attorney fees and the costs of this action pursuant to law; and

D.  All other relief which this Honorable Court deems equitable and just.

**JURY DEMAND**

Plaintiff respectfully demands a trial by jury of the within matter.

Dated:  June 27, 2025                                    Respectfully submitted,

*Imokhai Okolo*
_____
Imokhai Okolo
(Ohio Bar #100277)
**THE OKOLO LAW FIRM LLC**
850 ½ W. Exchange St.
Akron, OH  44302
Telephone: (216) 236-8857
Email:  iokolo@okololawfirm.com

*Counsel for Plaintiff*

17